Ewing, C. J.
The first and principal point in this causo is the just construction of the thirteenth section of the statute entitled “ An act making lands liable to be sold for the payment of debts.”
Both parties claim the farm in question under John Summers, the elder, 'whom they admit to have been seized and in possession on and before the fourth day of August, 1820. On that day an execution issued out of the Inferior Court of Common Pleas, of the county of Sussex, on a judgment signed on the 20th of July preceding, in favor of John Kinney and others, against the said John Summers, and David Summers, William Summers, John Summers, Jr., and Jacob Summers, was delivered to the sheriff of the county, *345 William Darrah, esquire, and was levied- on the premises in controversy and returned to the ensuing term of August. Afterwards, Daniel Feit obtained a judgment against John Summers, the elder, in the same court, signed on the 28th of April, 1821, upon which an execution was issued, delivered to sheriff Darrah, levied on the same premises, and returned to the ensuing term of May. Under the last mentioned execution, the farm was advertised and sold to David Summers, John Summers, Jr., William Summers, and *Jacob Summers, and a deed was made to them bearing date on the 30th of April, 1822. In Juno, 1828, the farm being anew advertised by Sheriff Darrah, under the execution in favor of John Kinney and others, was sold to Isaac Smith, and a deed was made to him on the 20th of August of the same year. The lessor of the plaintiff claims under the first judgment and execution and the second sale and deed, and insists that, by operation of law, he took the lands in question discharged of the first judgment and execution.
In the course of this cause no questions of fraud have been suggested or raised. Neither in the first judgment, nor in the delay to make sale under it, has any fraud been alleged. At the instance of the defendant, the judge, at the trial, overruled evidence offered by the plaintiff to show that the first judgment was delayed “at the request of the Summers.”
No question as to the want or effect of notice has been proposed. The purchasers at the first sale are defendants in the previous judgment.
The analogical argument drawn by the defendant’s counsel, from the effect of a sale of personal estate, is not applicable here. If a sheriff having a first and second execution sells chattels under the second, the purchaser, it is said, will hold them clear of the first execution, and the plaintiff therein must look to the sheriff for his remedy. This rule, however, ought not, as urged, to be extended to real estate. In chat *346 tels, the sheriff, by the execution and levy, acquires an interest; he may take possession; remove them from the defendant, and deliver them when sold; he may maintain an action if they are abstracted; he may in England, it is said, make a bill of sale of them without advertisement or public vendue. His duties and powers as to real estate are very different. He acquires no interest; can neither take nor deliver possession ; maintains no possessory action ; and is the instrument of the law for the transfer of the title after a public advertisement and sale.
By the first and second sections of the act making lands liable to be sold for the. payment of debts, Rev. Laws 430, a judgment is made a lien on the real estate; and will, of consequence, remain so until legally removed. According to the sixth section, the money is to be made of the real estate whereof the *party was seized on the day when the real estate became liable, “or at any time after-wards, in whose hands soever the same may then be.” In Green v. Allen, 2 Wash. 280, in the Circuit Court of the United States for Pennsylvania, money raised by sale of real estate under a fi. fa. on a judgment in that court, was ordered to be first applied to the satisfaction of a previous judgment and execution, although after the levy, further-proceedings had been stayed by order of the plaintiff. In Ridgley v. Gattrell, 3 Har. and McHen. 449, Ridgley obtained judgment in May, 1787, against Burgess for debt and costs. Execution was not issued. In November, 1791, Brown’s executors obtained a judgment against Burgess for debt and costs. In March, 1792, a fi. fa. issued thereon, and a tract of land, of which the defendant, Burgess, was seized at the first judgment, was sold, at .public .sale, to Oattrel, who was the highest bidder and purchaser for a valuable consideration, and a deed was made to him by the sheriff. It was held in this case, which was on scire facias against Gatt-rel, the purchaser, as terre-tenant, to make the tract answerable,- that the judgment of the plaintiff, Eidgley,, *347 ■was a lien on the land in the hands of Gattrell. In Jackson v. Mills, 13 John. 464, judgment against Bichard Osborne, the original owner of the premises in question, was docketed on the third of August, 1807. Execution was isssued thereon, a sale was made to Whitlock, the lessor of the plaintiff, and the sheriff’s deed to him bore date 15th February, 1814. Prior, however, to the sale on that execution, an execution had been issued against the same Bichard Osborne on another judgment in favor of another person docketed subsequently, and under this second judgment a sale and conveyance wrnre made by the sheriff before the sale and conveyance already mentioned under the first judgment. Spencer, J. for the court, said — ■“ Independenly of the parol evidence that the first purchase was subject to the prior lien, the law would produce that result. Whitlock acquired, by his purchase under the senior judgment, a title paramount to that of Harder’s, under the junior judgment.” And judgment was accordingly rendered in this action of ejectment, in favor of the plaintiff, who claimed under the first judgment and second sale, against the defendant, who claimed under the second judgment and first sale.
*These views of the subject evince, I think satisfactorily, that the operation of the thirteenth section should be our principal pursuit. ■ The section itself proves very forcibly that without it, the first judgment and execution would operate after the sale under the second. Otherwise the section is useless. From what judgments then is the purchaser at the sheriff’s sale to hold “ free and clear ” the real estate he lias purchased? “All other judgments, whatsoever, on or by virtue of which no execution has been taken out and executed on the said lands, tenements, hereditaments and real estate, so purchased.” What is here meant by an execution executed ? We ought not to understand, thereby, an execution under which all has been done which die writ requires, or the law permits ; under which a sale and conveyance of the real estate have actually been *348 made; and yet, undoubtedly, such is one sense of the word, executed; for it seems to me it could not have.'entered into the imagination of any one that it was necessary or useful to declare such lands clear and free from a subsequent j udgment and execution. To execute, does sometimes mean, as suggested by the defendant’s counsel, to fulfill, to complete; but it has also other significations, especially when used in legal affairs. Thus the writ is called an execution, before it has performed any of its functions. Our purpose, however, 'should be to seek the sense in which the word has been used in the section before us. The phrase is a peculiar one; “ executed on the lands.” If it had been used in the same sense as completed or fulfilled, we may suppose the phrase would have been simply “ taken out and executed,” for the whole idea would have been then expressed. But some qualification or limitation of this idea was designed. The legislature, moreover, intended that something more should be done than merely to take out the execution; for it might be levied on some and not on all of the lands of the defendant ; and if so, the lands not levied on, if purchased, might in good policy be cleared from the judgment, as the plaintiff had not thought fit to extend his execution to them. As, then, an execution fulfilled or completed is not meant, but something short of it, yet as an. execution fastened on the lands is plainly designated, the true construction seems to be equivalent to, levied, an execution levied on the lands. This interpretation is supported by the preamble of the *section, whither it is lawful to resort for light when the enacting clause is equivocal or obscnre; not that the generality of the latter is at all times to be limited to the particular instance recited, nor that the latter may not often be general, and the former special, but as one methqd, among others, to unfol'd the meaning of the law giver. The scope of the preamble is, those who have not taken out or will not take out executions upon their judgments. If it be argued.that under this construction a doubt might arise *349 whether a subsequent execution levied before the sale might not embarrass the purchaser. I think not, even under this section. But clearly not when we refer to the twelfth section which gives to the purchaser as good and perfect an estate in the premises, as the person against whom the writ of execution issued was seized of or entitled to at the judgment under which the sale was made. In the case of Den v. Maffet, this subject came, not directly, but incidentally, before this court. The question was whether two sheriffs could advertise jointly, sell jointly, and subscribe a joint deed of real estate. Kirkpatrick, G. J. for the court, said — • “ it is very certain, I think, that the act subjecting lands to be sold on execution for the payment of debts, gives no such joint authority. As the law now stands, the sheriff who has the first execution has, of course, the first right to sell if he chooses to pursue it. But if the sheriff who has the first levy shall neglect or refuse to sell at the first day, then he who has the next levy may sell, subject to such prior execution, but not to raise money to pay it.”
I am of opinion the execution of Kinney and others was at the time of the sale under the execution of Feit, an execution executed on the farm in question according to the true intent and meaning of the thirteenth section; and hence Smith acquired a valid title by virtue of his purchase.
The defendant farther sought to impeach the deed under which the plaintiff claims title by certain evidence which he offered of the manner of conducting the sale by the sheriff; which evidence was, however, overruled by the judge; and the defendant now urges the rejection of this evidence as a ground for new trial. Upon the admissibility of this evidence, I have entertained .some doubts, not, however, amounting to a belief that it was improperly overruled. Inasmuch, however, as my brethren *are fully satisfied that the evidence was inadmissible, it is unnecessary for me to express any opinion.
Judgment for plaintiff.
*350 Drake, J. It is admitted by the parties, that on, and previous to, the 20th July, 1820, the premises in question were owned and possessed by John Summers ; and the plaintiff gave in evidence,
1st. A judgment by confession, entered on that day, of the Inferior Court of Common Pleas in the county of Sussex (then extending over the said lands) at the suit of John Kinney, Jr., against the said John Summers, together with his four sons, David, William, John, and Jacob Summers. — • Which judgment was accompanied by the proper affidavit.
2d. A writ of fi. fa. sued out on said judgment, returnable to the term of August, 1820, and marked “ received 4 Aug., 1829, by Darrah, sheriff,” which was levied on the lands in question.
3d. A deed from William Darrah, late sheriff of Sussex, to Isaac Smith, the lessor of the plaintiff, dated 20th August, 1828, purporting to be founded on the j udgment and execution aforesaid.
The defendant gave in evidence an exemplification of a judgment, Daniel Feit v. John Summers, signed the 28th of April, 1821, a writ of fi. fa. issued on said judgment, returnable to May term 1821, endorsed to levy $300 with interest and costs ; and a deed for the premises in question from William Darrah, sheriff of Sussex, to David Summers, John Summers, Jr., William Summers, and Jacob Summers, dated the 30th day of April, 1822.
The question is, which of these titles is to be preferred?
The title of Smith, the lessor of the plaintiff, being derived under the oldest judgment, and also the oldest execution and levy, would undoubtedly be entitled to the preference unless prevented by the operation of the thirteenth section of the act making lands liable to be sold for the payment of debts, Devised Laws, p. 433. By this it is enacted that the purchaser, at sheriff’s sale, “his heirs and assigns, shall hold the lands, &c., by him or her purchased as aforesaid, free and clear of all other judgments,” &o., on or by virtue of *351 ■which no execution has been taken out and executed on the lands, &c., so purchased. *The execution, under which the plaintiff derives title, was taken out and levied before the sale to the defendants, but the property was not sold under it until long afterwards; and the defendant insists, that by virtue of the above act, he should hold the land free from all lien or claim arising under the oldest execution, because it was not fully executed by sale. The plaintiff, on the other hand, insists that the word executed, used in the act, there means merely levied.
The preference which the law gives to claims spread upon tho public records over those originating subsequently, or' if of equal origin, less diligently pursued, is founded in justice and good policy. If a judgment be permitted to lie without execution more than a year and a day, the law raises such a presumption of satisfaction, that the plaintiff shall not have execution, without calling on the defendant to show cause to the contrary, if any he have. And between judgment creditors, the legislature have not permitted tho parties to repose in safety for even that length of time, but gives the preference to the execution first sued out and delivered to the sheriff, Revised Laws, p. 431, sections 3 and 4. So much the legislature have clearly done to enforce diligence in the parties, and to increase the notoriety of liens. And so much they could do without injustice; for so far the party has had the control of his claim, and of the remedies for its recovery, and if ho failed in diligence might with propriety be punished by the loss of his priority. But when he has placed his writ in the hands of the officer, who gives notice of his intention to appropriate certain property to its satisfaction, by levying on it, the party plaintiff' should not lose his priority by misfortune, mistake, accident, or even every species of negligence, on the part of the sheriff. It may be readily perceived that many circumstances may interfere and prevent a sale within any specified time, as the death of the sheriff, a mistake in an advertisement, a *352 postponement by injunction or rule of court or other matter, ■which ought not to take, away the plaintiff’s rights. I should be unwilling to give a construction to the act which would take away a priority under such circumstances, unless its language imperatively requires it.
The word executed, used in the act, does not 'uniformly mean, when applied to writs of fi. fa. a complete execution. It is ^perhaps more frequently used in reference to the first part of the execution of the writ, to wit, the levy. Our books are full of .instances of this use of the term. See 1 Wilson, 44; 2 Tidd, 912, 1072; Willes, 271; 6 Mod. 290, 298; 2 Term Rep. 44. And this use of it conforms to the mischief adverted to -in the preamble, that persons “ who have not taken out., or will not take out, executions on their judgments, ought not to hinder, or prevent, those who do, from having the proper effect and fruits thereof.”
To suppose that there must have been an actual sale of the premises, by virtue of the first execution, to preserve its lien, is absurd. The second sale would be then wholly nugatory, and the purchaser under it would have-no estate .at all in the premises. The legislature could not have contemplated that a second sale would take place under such circumstances, and would not have provided securities for the title passing under it, when no title at all could pass.
In the case of Maffit at the suit of Den 1 Halsted, 229, the Chief Justice says “ if the sheriff, who has the first levy, shall neglect or refuse to sell at the first day, then he who has the next levy shall sell subject to such prior execution.” I deem this a sound construction of the act; and, of course, that this reason for setting aside the verdict should not prevail.-
The next objection.to the verdict, taken by the defendant, is that the court overruled testimony offered by him, that the sheriff, in his conditions'of sale, had undertaken to adjourn the sale for a fortnight, in case the property should *353 be bid off by any person who should neglect or refuse to comply with those conditions; and that the property was struck off to oue of the defendants who refused to comply ; and yet the sheriff, instead of adjourning for a fortnight, immediately set it up again, and struck it off to the lessor of the plaintiff, who was the highest bidder, and executed to him a deed for it accordingly. This evidence could have no operation on the issue unless it would render the sale a nullity, and avoid the deed given by the sheriff in consequence of it. It should have no such effect. The sheriff must exercise a reasonable discretion in selling property. He may even disregard a bid from a person who cannot pay. Den v. Zellers, 2 Halsted, 156, and if, on this occasion, *he contemplated taking a certain course under a supposed state of things, and had so published in his conditions of sale, and his discretion, afterwards, determined to act otherwise, it is not a matter which will necessarily make the sale void. It was a voluntary obligation, assumed by the officer, when he thought it would best subserve the interests of the parties concerned, and it ought not to have stood in the way of his proceeding to sell when he did, if he then considered that those interests required an immediate sale. A substantial departure from the directions of the legislature will vitiate his sale, became his power to sell is subject to the conditions imposed by the same authority which created the power. But, as a general rule, it is otherwise with resolutions, or regulations, of his own making, as to minor particulars in conducting a sale. If they were inviolable, they might seriously jeopardize the interests of the plaintiff, connected with a state of things not anticipated, and either arising naturally, or brought about by the management of defendants. If the sheriff, on this occasion, acted corruptly, or with gross indiscretion, so that the defendant in execution, or any other person, has received injury, the laws furnish them redress; and if there was any fraudulent collusion between him and the purchaser, *354 the sale may be set aside. But there is no appearance of such collusion in this case. The purchaser, relying on the correctness of this public official act of the sheriff, paid his money in good faith, and his deed should not, upon such facts, be declared void. The evidence, therefore, being insufficient to avoid the deed, could have no just operation on the cause, and was very properly overruled.